UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIGHT HARVEST SWEET POTATO COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> H.J. HEINZ COMPANY, L.P., <br><br> Defendant. | Case No. 1:13-cv-296-BLW <br><br> MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

The Court has before it cross motions for summary judgment (Dkt. 45, 47) as well as Plaintiff's Motion to Strike. (Dkt. 51). The Court heard oral argument on July 9, 2014, and took the motions under advisement. After further review, the Court will deny both motions.

**BACKGROUND**

This is a breach of contract claim brought against H.J. Heinz Co. by Bright Harvest Sweet Potato Company, Inc. Bright Harvest alleges Heinz breached the Co-Pack Agreement when they stopped purchasing sweet potato fries after August 2011.

Bright Harvest and Heinz signed a Co-Pack Agreement on December 7, 2009. The Co-Pack Agreement set terms, conditions, and prices for Bright Harvest to produce sweet potato fries under Heinz's Ore-Ida label. (Dkt. 45-2, p. 1). The Agreement set forth that

**MEMORANDUM DECISION AND ORDER - 1**

Heinz "shall place purchase orders with Co-Packer [Bright Harvest], and Co-Packer shall sell and deliver to Heinz, quantities of the products [sweet potato fries] under the terms of this Agreement." (Dkt. 10-1, p. 4). The term of the Agreement was from December 1, 2009 until November 30, 2015. (Dkt. 10-1, p. 4). The production schedule established a "non-binding planning target of 10 million pounds of sweet potato fries per year, and it is the intent of the Parties that Heinz will deliver to Co-Packer purchase orders for such Products as hereinafter provided, subject to the current capacity of Co-Packer to produce such Products." (Dkt. 10-1, p. 5).

In addition, Heinz was to provide electronic rolling weekly demand files with 5 weeks of firm production orders and 8 weeks of forecast. (Dkt. 10-1, p. 5). No purchase order could exceed 50% of Bright Harvest's current forecasted volume without mutual consent. (Dkt. 10-1, p. 5). Further, Heinz was to provide Bright Harvest 12 to 18 month rolling forecasts quarterly for operational management and capacity planning. (Dkt. 10-1, p. 6). Section 4 of the Agreement states "Heinz may source the sweet potato fry products from its own factories or from any other source during the term hereof." (Dkt. 10-1, p. 6).

Bright Harvest supplied Heinz with sweet potato fries from 2009 until mid-2011. In 2009, Bright Harvest produced approximately 200,000 pounds of the requested 400,000 pounds of sweet potato fries, and in 2010, they produced 6 million pounds for Heinz. (Dkt. 45-1, p. 5). During the term of the Agreement, Heinz began producing sweet potato fries in their Ontario, Oregon facility. (Dkt. 45-1, p. 5). And, in March 2011, Heinz submitted a 13-month rolling forecast to Bright Harvest requesting only 4.1 million pounds of sweet potato fries between April 2011 and 2012. (Dkt. 45-1, p. 6).

To settle the dispute over the drop in requested production, Heinz drafted a letter revising its forecast from 4.1 million pounds to over 7 million pounds, which Bright Harvest signed. (Dkt. 45-1, p. 6). From July 13, 2011, Heinz supplied Bright Harvest with 12-18 month forecasts showing zero volume for all products starting in September 2012 and moving forward. (Dkt. 45-1, p. 8). Bright Harvest then filed a breach of contract claim against Heinz in July 2011.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no material factual disputes – does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id.*

**ANALYSIS**

1. **Motions for Summary Judgment**

Both parties have moved for summary judgment. The pivotal issue in this case is whether the Co-Pack Agreement is a requirements contract, which requires exclusivity. *Harvey v. Fearless Farris Wholesale, Inc.*, 589 F.2d 451, 461 (9th Cir. 1979). A requirements contract occurs when the buyer expressly or implicitly promises to obtain his goods or services exclusively from the seller. *Id.* A requirements contract does not specify the quantity of goods to be purchased, but to avoid an illusory contract exclusivity must be present. *See AGA Shareholders, LLC v. CSK Auto, Inc.*, 589 F. Supp. 2d 1175, 1183 (D. Arizona 2008). The Court will not grant summary judgment if the contract is ambiguous. *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir. 1981). A Court determines, as a question of law, that a contract is ambiguous when there are two or more reasonable interpretations. *Swanson v. Beco Construction Co., Inc.,* 175 P.3d 748, 751 (Idaho 2007).

Here, there are two reasonable interpretations as to exclusivity. Section 3 of the Co-Pack Agreement states, "it is the intent of the Parties that Heinz will deliver to Co-Packer purchase orders for such Products as hereinafter provided, subject to the current capacity of Co-Packer to produce such Products." (Dkt. 10-1, p. 5). This language implies Heinz will purchase all of their sweet potato fries from Bright Harvest to the extent Bright Harvest has the capacity and is able to produce sweet potato fries.

However, there is language in Section 4 explicitly suggesting non-exclusivity; "Heinz may source the sweet potato fry products from its own factories or from any other

source during the term hereof." (Dkt. 10-1, p. 6). One possible interpretation of that language is that Heinz is not committed to purchase all of their sweet potato fries from Bright Harvest as Section 4 suggests. But, an alternative interpretation is that Heinz is only able to self-manufacture or outsource if Bright Harvest is incapable of meeting Heinz's requirements. This interpretation is reasonable because Section 3 (ii) states, "Heinz agrees that no monthly purchase order may exceed 50% of Co-Packer's current forecasted volume without mutual consent." This provision limits the amount of sweet potato fries that Heinz can purchase from Bright Harvest.[1]

    Because it is unclear whether Heinz had an obligation to purchase sweet potato fries exclusively from Bright Harvest, the matter should be submitted to the trier of fact to determine the parties' intent at the time they drafted the contract.[2] Accordingly, the Court will deny both motions for summary judgment.

---

[1] In this regard, the Co-Pack Agreement can be viewed as both an output and a requirements contract: Heinz commits to purchase all of its requirements from Bright Harvest and Bright Harvest agrees to commit 50% of its output to satisfy Heinz's requirements. However, such a hybrid contract is neither illusory nor unenforceable, since an enforceable sales contract may measure the quantity to be provided by either the output of the seller or the requirements of the purchaser. Idaho Code § 28-2-306(1). Here, under one reasonable view of the contract, it is measured by both.

[2] The parties' Settlement Agreement does not change the result. From its review, the Court is not persuaded that the Settlement Agreement changed the parties' obligations under the Co-Pack Agreement. Indeed, the Settlement Agreement explicitly so provides: "Each party's respective obligations and duties under the Agreement . . . shall continue on and after the Effective Date and this mutual release does not discharge or alter the duties and obligations of the parties under the Agreement." Dkt. No. 45-5.

## 2. Plaintiff's Motion to Strike

Because the Court did not rely on any of the information subject to the Motion to Strike in making its determination on the Motions for Summary Judgment, the Court will deem moot the Motion to Strike.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Dkt. 45) is **DENIED**.

2. Plaintiff's Motion for Partial Summary Judgment (Dkt. 47) is **DENIED**.

3. Plaintiff's Motion to Strike (Dkt. 51) is **DEEMED MOOT**.

DATED: August 5, 2014

B. Lynn Winmill
Chief Judge
United States District Court