UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIGHT HARVEST SWEET POTATO COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> H.J. HEINZ COMPANY, L.P., <br><br> Defendant. | Case No. 1:13-CV-296-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it three motions in limine filed by Plaintiff Bright Harvest Sweet Potato Company, Inc. (Dkts. 85, 86, 110). The Court will address each motion below.

# ANALYSIS

## 1. Plaintiff's First Motion in Limine Re: Conduct of Plaintiff.

Bright Harvest requests the Court exclude evidence that it breached or failed to adequately perform under the Co-Pack Agreement ("CPA"). (Dkt. 85). The May 3, 2011 Settlement Agreement indeed bars claims of breach before April 25, 2011. However, evidence of documents, statements, and actions prior to that date may be relevant for another purpose. At this point, the Court is unable to rule on the admissibility of such evidence. Bright Harvest insufficiently describes the evidence it wishes to exclude in

order for the Court to make an informed ruling. As such, the Court will reserve ruling on the motion until trial.

Both parties stated they will not claim a breach occurred prior to April 25, 2011. To the extent that Heinz seeks to introduce evidence of Bright Harvest's actions and statements for another purpose, it should be prepared to show why such evidence is otherwise admissible. The Court will resolve any dispute on this issue outside the presence of the jury.

The Court will note, however, its concern that such evidence may result in re-litigating a previously settled claim. If necessary, the Court will instruct the jury on the limited purpose for such evidence. Additionally, the Court will consider the rule of completeness when determining the admissibility of evidence at trial. Exhibits may not be redacted to change the exhibit's meaning. The Court must tread carefully to avoid redacting necessary context to ensure that events and decisions are not misleading to the jury. Finally, the Court will balance the prejudicial effect of the evidence with its probative value.

Bright Harvest also claims four exhibits are inadmissible compromise statements and settlement offers. Specifically, Bright Harvest asks the Court to exclude BH003902-03 (Ex. 2105), BH004318-25 (Exs. 2093, 2094), and Heinz002417-19 (Ex. 2098). The Court will address each of these exhibits in turn.

Rule 408 prohibits evidence of conduct or statements made during compromise negotiations "to prove or disprove the validity or amount of a disputed claim or to

impeach by a prior inconsistent statement or a contradiction." FED. R. EVID. 408. However, "[t]he court may admit this evidence for another purpose," so long as it weighs the policy considerations behind Rule 408 with the need for the evidence. *Id.* Rule 408 is founded on two main policies: (1) "[t]he evidence is irrelevant since the offer may be motivated by a desire for peace rather than from any concession of weakness of position," and (2) "promotion of the public policy favoring the compromise and settlement of disputes." FED. R. EVID. 408 advisory committee's note; *see also Philadelphia's Church of Our Savior v. Concord Township*, No. Civ. A. 03-1766 2004 WL 1824356 (E.D. Pa. July 27, 2004).

The Court applies Rule 408 to avoid deterring compromise and settlement of disputes. Nevertheless, Rule 408 does not apply to all statements made during compromise negotiations—only statements about the claim. FED. R. EVID. 408. Additionally, these statements must be made during negotiations and not made in the regular course of business. *Id.*

Exhibit 2093 is a letter from Rex King to Jonathan Bailey discussing Heinz's production volumes. *Def.'s Opp'n*, Dkt. 97, at 19-26. Exhibit 2094 is an annotated copy of that letter. *Id.* Bright Harvest argues that Exhibits 2093 and 2094 are compromise communications because "Mr. King offers to resolve the dispute through Defendant restoring the current 2010 crop year production to the previously forecasted level while dropping the production level for the 2011 crop year." *Pl.'s Reply*, Dkt. 106, at 5. However, Bright Harvest mischaracterizes the letter. The letter is not a statement made

during compromise negotiations; it is a performance letter demanding Heinz comply with its commitments and other obligations under the CPA. In the letter, King discusses production volumes, rolling forecasts, and Heinz's requests to procure additional raw sweet potatoes. As evidenced by the line "[w]e cannot accept however that Heinz feels that it can 'walk away' from commitments to Bright Harvest for the 2010 crop year," Bright Harvest sent this letter to demand performance from Heinz. *Def.'s Opp'n*, Dkt. 97, at 19-26. Although Bright Harvest states that it may "have to explore [its] legal position," it did not propose a settlement to a pending claim. *Id.* Instead, it engaged in business communications with Heinz regarding Heinz's commitment to purchase potatoes in 2010. Therefore, the letter is not a "statement made during compromise negotiations about the claim." Consequently, the Court will not exclude Exhibits 2093 and 2094 under Rule 408.

Next, Exhibit 2098 is an April 5, 2011 letter from Donald Kerr to Jonathon Bailey. Heinz does not object to exclusion of this Exhibit, so long as Plaintiff's identical Exhibit 1041 is also excluded. *Def.'s Sur-Reply*, Dkt. 119, at 9. Accordingly, the Court grants Bright Harvest's motion.

Finally, Exhibit 2105 includes two e-mails – one from Rex King addressed to Tim Hensley and Johnathan Bailey, and the other sent from Jonathan Bailey to Rex King in response. The e-mails were written on April 26, 2011 as a follow up to April 25, 2011 settlement negotiations between Bright Harvest and Heinz. Bright Harvest contends that these e-mails discuss "a significant contractual dispute between Bright Harvest and

Heinz" and were sent "during negotiations [commenting] on Bright Harvest's claim and damages." *Pl.'s Reply*, Dkt. 106, at 5. In particular, Bright Harvest focuses on the language in the first e-mail that reads, "there has been a violation of the agreement and that needs to be remedied." *Def.'s Opp'n*, Dkt. 97, at 27. Heinz, in response, maintains that the e-mails may be introduced to demonstrate that Rex King and Donald Kerr knew Heinz self-manufactured products before April 26, 2011. Thus, Heinz argues, the e-mails should be admitted to prove notice.

Evidence offered to prove notice falls outside the scope of Rule 408 and is deemed admissible (at least insofar as Rule 408 does not bar admission). *U.S. v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995). Indeed, [w]hen statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1161-62 (9th Cir. 2007). To the extent that Heinz seeks to introduce Exhibit 2105 to demonstrate notice, such evidence may be admissible. However, the Court will defer ruling until the parties lay further context and foundation at trial. As discussed above, the Court will balance the need for this evidence against the policies of Rule 408.

   **2. Plaintiff's Second Motion in Limine Re: Offers of Compromise.**

Bright Harvest seeks exclusion of Heinz003724-27 (Ex. 2142) and Heinz005210-11 as inadmissible compromise offers. (Dkt. 86). Heinz agrees not to introduce Heinz005210-11 at trial. The other document, Heinz003724-27, is a four-page e-mail from Rex King to Jonathon Bailey "object[ing] to the recent actions taken by Heinz with

respect to the Co-Pack Agreement" and "propos[ing] a more reasonable middle ground." *Def.'s Opp'n*, Dkt. 99, at 8. Heinz argues that the Court can resolve any issue with compromise statements by redacting the final three paragraphs of the e-mail. Heinz further maintains that the remainder of the e-mail should not be excluded.

As discussed above, evidence of conduct or statements made during compromise negotiations is "not admissible… to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." FED. R. EVID. 408. It appears that Heinz seeks admission of the e-mail to interpret the Settlement Agreement and to demonstrate King's understanding of the CPA.

Although King wrote the e-mail to "object to the recent actions taken by Heinz with respect to the Co-Pack Agreement" and "propose a more reasonable middle ground," King clearly wrote the e-mail to initiate settlement negotiations. *Def.'s Opp'n*, Dkt. 99, at 8. Indeed, King may have proposed a settlement to promote compromise rather than concede any issue.

Heinz seeks to introduce the e-mail to bolster its position that Bright Harvest knew Heinz would not purchase product beyond September 2012. This impermissibly attempts to prove the validity of a disputed claim. Likewise, the language regarding Heinz's desire to self-manufacture products also bolsters Heinz's argument about the validity of a disputed claim. These arguments seek to demonstrate that the CPA is not a requirements contract, which the Court already held is at issue in this case and for the jury to

determine. Thus, Heinz seeks to prove liability for a disputed claim. Accordingly, the Court will grant Bright Harvest's motion.

3.     **Plaintiff's Fifth Motion in Limine Re: Intent Evidence.**

Finally, Bright Harvest requests the Court preclude Heinz from presenting evidence of Heinz's subjective, undisclosed intent in entering into the CPA. (Dkt. 85). The parties' intent is only relevant when a contract is ambiguous. *J.R. Simplot Co. v. Bosen*, 167 P.3d 748, 751 (Idaho 2006). The Court previously recognized that the CPA is ambiguous. (Dkt. 61). Its interpretation, therefore, is a question of fact. *See Pocatello Hosp., LLC v. Quail Ridge Med. Investor, LLC*, 330 P.3d 1067, 1078 (Idaho 2014).

The CPA should be interpreted "to determine the intent of the contracting parties at the time the contract was entered." *Id.* (citation omitted). "In determining the intent of the parties, this Court must view the contract as a whole," since the parties' words are the best evidence of their intent. *Id.* (citation omitted). Nonetheless, because the CPA is ambiguous, the jury must discern the contracting parties' intent, generally by considering the objective and purpose of the CPA and the circumstances surrounding its formation. *J.R. Simplot Co*, 167 P.3d at 751. However, "[a] party's subjective, undisclosed intent is immaterial to the interpretation of a contract." *Id.* Indeed, "[t]he court will not attempt to ascertain the actual mental processes of the parties in entering into the particular contract." *Id.* (citing 17 AM. JUR. 2D, *Contracts*, § 347 (2004)).

Nevertheless, communications between Bright Harvest and Heinz are relevant to understanding the objective and purpose of the CPA. And a party's subjective intent is

relevant, so long as that intent was disclosed. Recently, the Supreme Court of Idaho ruled that a party's subjective intent may not be considered when interpreting a contract if the party did not communicate that intent to the other party. *Pocatello Hosp., LLC*, 330 P.3d at 1076. In that case, the defendant unilaterally modified the terms of a lease. *Id.* As such, the defendant's intent to modify the lease was undisclosed. *Id.* Thus, the Court found that neither the modification nor one party's subjective, undisclosed intent were sufficient evidence of the parties' mutual intent to modify the lease. *Id.* However, a party's subjective, *disclosed* intent is evidence of the parties' mutual intent, and is therefore relevant to interpreting a contract.

Similarly, in *J.R. Simplot Co.*, the Supreme Court of Idaho refused to consider a party's subjective, undisclosed intent when interpreting a contract. 167 P.3d at 751. There, the defendant argued that he did not intend to individually enter into an agreement with the plaintiff or be personally liable on his company's account. *Id.* at 751. However, the plaintiff failed to "verbaliz[e] to any of [defendant's] agents his intent not to be personally obligated under the contract." *Id.* The defendant had no way of knowing the plaintiff's intentions because the plaintiff never communicated those intentions. As such, the Court found that the plaintiff's subjective, undisclosed intent did not create a genuine issue of material fact. *Id.*

In this case, Heinz intends to call witnesses that will testify about "communications between the parties. . . regarding the intent of Heinz." *Def. Opp'n*, Dkt. 118, at 3. Heinz's witnesses may testify to Heinz's subjective intent in entering into the

CPA, but only to the extent that Heinz disclosed its subjective intent to Bright Harvest through those communications. Such disclosure notified Bright Harvest of Heinz's intentions and demonstrates the mutual intent of the parties in entering into the CPA. Accordingly, the Court precludes Heinz from offering testimony of subjective, undisclosed intent and grants Bright Harvest's request to exclude such testimony. The parties should be prepared to discuss proffered evidence concerning a party's subjective intent outside the presence of the jury.

Bright Harvest further requests the Court exclude evidence of Heinz's subjective intent when it entered into the Settlement Agreement. The Court will not address such evidence. As noted above, the parties' intent is only relevant when a contract is ambiguous. Neither party points to an ambiguity in the Settlement Agreement, and the Court is currently unaware of an ambiguity. The parties' words are the best evidence of their intent. *Pocatello Hosp., LLC*, 330 P.3d at 1078. "[T]he law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest." *J.R. Simplot Co*, 167 P.3d at 751 (citing 17 AM. JUR. 2D, *Contracts*, § 347 (2004)). Accordingly, any other evidence of a party's subjective intent in entering into the Settlement Agreement is irrelevant.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's First Motion in Limine (Dkt. 85) is **GRANTED** in part, **DENIED** in part, and **RESERVED** in part.

2. Plaintiff's Second Motion in Limine (Dkt. 86) is **GRANTED**.

3. Plaintiff's Fifth Motion in Limine (Dkt. 110) is **GRANTED**.

DATED: March 12, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court