UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIGHT HARVEST SWEET POTATO COMPANY, INC., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>H. J. HEINZ COMPANY, L.P., a Pennsylvania limited partnership<br><br>Defendant. | Case No. 1:13-cr-00296-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is Plaintiff Bright Harvest Sweet Potato Company's (Bright Harvest) Rule 59 Motion to Alter or Amend Judgment or, in the alternative for New Trial (Dkt. 165). Having reviewed the Motion, Defendant H. J. Heinz Company's (Heinz) Response (Dkt. 169), and Bright Harvest's Reply (Dkt. 173) the Court finds that the parties have adequately identified the issues and that a hearing is not necessary. Following that review, the Court enters the following Order denying the Motion to Alter or Amend Judgment, but granting the Motion for New Trial.

# BACKGROUND

This case involves a breach of contract claim brought against Heinz by Bright Harvest. Bright Harvest alleges Heinz breached the Co-Pack Agreement when they stopped purchasing sweet potato fries prior to its expiration.

Bright Harvest and Heinz signed the Co-Pack Agreement on December 7, 2009. The Co-Pack Agreement set terms, conditions, and prices for Bright Harvest to produce sweet potato fries under Heinz's Ore-Ida label. (Dkt. 45-2, p. 1). The Agreement set forth that Heinz "shall place purchase orders with Co-Packer [Bright Harvest], and Co-Packer shall sell and deliver to Heinz, quantities of the products [sweet potato fries] under the terms of this Agreement." (Dkt. 10-1, p. 4). The term of the Agreement was from December 1, 2009 until November 30, 2015. (Dkt. 10-1, p. 4). The Agreement established a "non-binding planning target of 10 million pounds of sweet potato fries per year," and indicated that it was "the intent of the Parties that Heinz will deliver to Co-Packer purchase orders for such Products as hereinafter provided, subject to the current capacity of Co-Packer to produce such Products." (Dkt. 10-1, p. 5).

In addition, Heinz was to provide rolling weekly demand files with 5 weeks of firm production orders and 8 weeks of forecast. (Dkt. 10-1, p. 5). No purchase order could exceed 50% of Bright Harvest's current forecasted volume without mutual consent. (Dkt. 10-1, p. 5). Further, Heinz was to provide Bright Harvest 12 to 18 month rolling forecasts quarterly for operational management and capacity planning. (Dkt. 10-1, p. 6).

MEMORANDUM DECISION AND ORDER - 2

Bright Harvest began supplying Heinz with sweet potato fries in 2009. In the first year of the contract, Bright Harvest produced approximately half of the requested 400,000 pounds of sweet potato fries, and in 2010, they produced 6 million pounds for Heinz. (Dkt. 45-1, p. 5). While the Agreement was still in effect, Heinz began producing sweet potato fries in its Ontario, Oregon facility. (Dkt. 45-1, p. 5). And, in March 2011, it submitted a 13-month rolling forecast to Bright Harvest requesting only 4.1 million pounds of sweet potato fries between April 2011 and 2012. (Dkt. 45-1, p. 6). Sweet Harvest claimed that this drop in requested production constituted a breach of the Co-Pack Agreement. To settle this dispute, Heinz drafted a letter revising its forecast from 4.1 million pounds to over 7 million pounds, which Bright Harvest signed. (Dkt. 45-1, p. 6). However, beginning in July of 2011, Heinz provided Bright Harvest with 12-18 month forecasts showing zero volume for all products after September 2012. (Dkt. 45-1, p. 8). Regarding this as a breach of the Co-Pack Agreement, Bright Harvest filed a breach of contract claim against Heinz in July 2011.

A jury trial was held in March 2015. At the conclusion of the trial, the jury was given a special verdict form containing three questions. (Dkt. 153-1). The first question required the jury to determine whether or not the Co-Pack Agreement was an enforceable contract. The jury answered that it was. The second question asked the jury to decide whether or not Heinz had breached the Co-Pack Agreement. The jury answered that it had not. As a result, the third question regarding the amount of damages was not

answered by the jury. Bright Harvest has now filed a motion under Rule 59 of the Federal Rules of Civil Procedure to amend the judgment, or, in the alternative, for a new trial.

## LEGAL STANDARD

The standard for altering or amending a judgment is found in Rule 59(e), while the standard for granting a new trial is found in Rule 59(a).

1. **Rule 59(e) Motion to Alter or Amend Judgment**

District courts have "considerable discretion" when addressing motions to amend a judgment under Rule 59(e). *Turner v. Burlington Northern Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). However, "a Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014). (Citing *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000)). "There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law." *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (Internal citations and quotation marks omitted).

2. **Rule 59(a) Motion for New Trial**

Rule 59(a) states that the Court may grant a new trial on all or some of the issues, and to any party, "after a jury trial, for any reason for which a new trial has heretofore

been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). From this language, the Ninth Circuit has held that the trial court, in considering a motion for new trial "is bound by those grounds that have been historically recognized." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)(Internal citation and quotation omitted). Those "grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Id.* (Internal quotation and citation omitted). Thus, "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.* (Internal quotation and citation omitted). Thus, "[u]pon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Id.* (Brackets in original) (Internal quotation and citation omitted). The determination of "the clear weight of the evidence" is a fact-specific endeavor, and there must only be some "reasonable basis" for the jury's verdict. *U.S. v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (citations omitted).

## ANALYSIS

1.     **Bright Harvest's Motion for a New Trial is Not Barred by Procedural Issues.**

Heinz initially raises two procedural objections to Bright Harvest's motion. The Court is not persuaded by either objection.

First, Heinz argues that the Court should follow the rule of the First Circuit that objections challenging the consistency of a special verdict must be made before the jury is discharged. However, the Ninth Circuit has ruled that a party is free to raise the claim of an inconsistent jury verdict even after the jury has been discharged. *See Guy v. City of San Diego*, 608 F.3d 582, 586 (9th Cir. 2010). Thus, there is no reason to consider a contrary rule suggested by another circuit.

Second, Heinz argues that Bright Harvest did not request a new trial on any issue except its claim that there was an improper jury instruction. However, Bright Harvest's request for a new trial was not limited to its claim of an improper jury instruction. The relief requested in the Motion clearly states that Bright Harvest seeks a new trial if the Court does not alter the judgment. It does not limit that request to a specific issue. Therefore, Heinz's contention that a new trial can only be granted based on the claim of an improper jury instruction is incorrect.

## 2. The jury's determination that the contract was enforceable but had not been breached is against the clear weight of the evidence.

The main thrust of Bright Harvest's argument is that the jury's answers are "irreconcilably inconsistent and [are] against the clear weight of the evidence." *Motion to Alter Judgment* at 3, Dkt. 165-1. Generally, of course, there is nothing inconsistent about a jury finding that an enforceable contract existed, but then concluding that it was not breached. However, citing Jury Instruction No. 14, Bright Harvest contends that the contract was only enforceable if it was a requirements contract under Idaho Code § 28-2-306. Bright Harvest argues that, given the evidence at trial, the jury had no choice but to

conclude that Heinz breached the contract if it was a requirements contract. In essence, Bright Harvest claims that Heinz's actions, as the evidence established at trial, clearly breached its obligations under a requirements contract. Therefore, the jury's contrary conclusion was against the clear weight of the evidence. The Court agrees.

> a. *The jury found that the contract was enforceable either because of exclusivity or because the planning target was a "stated estimate."*

Jury Instruction No. 14 stated that the jury could find the Co-Pack Agreement enforceable under either of two circumstances: (1) if it contained a term which measures the quantity of sweet potato fries to be sold by a stated estimate of what Heinz required, or (2) if it contained a term which required Heinz to obtain its sweet potatoes exclusively from Bright Harvest. *Jury Instructions* at 18, Dkt. 152. Bright Harvest argues that under either finding, the jury's verdict that the contract was not breached is against the clear weight of the evidence.

Heinz responds by suggesting a third alternative which would explain the jury's finding. Specifically, Heinz's theory is that the jury may have determined that the rolling 12 to 18 month forecasts were stated estimates and made the contract enforceable. *Response to Motion to Alter Judgment* at 13, Dkt. 169. Heinz argues that the evidence at trial made it possible to conclude that the planning target was a non-binding estimate of a promised future estimate and that Heinz retained the ability to "self-manufacture Products without restriction or limitation." *Id.* at 12.

Heinz argument fails, however, because it would require the jury to have ignored the jury instructions and would have made the Agreement unenforceable as a matter of

MEMORANDUM DECISION AND ORDER - 7

law. Heinz's theory fails because it would require the jury to ignore the plain text of Jury Instruction No. 14 that the estimate must be **stated**. A stated estimate creates an enforceable requirements contract when an agreement is not exclusive because the estimate acts as consideration. *See City of Louisville v. Rockwell Mfg. Co.*, 482 F.2d 159, 164 (6th Cir. 1973); *cf. Amber Chemical, Inc. v. Reilly Industries, Inc.*, No. 106CV06090OWWSMS, 2007 WL 512410, at *8 (E.D. Cal. Feb. 14, 2007) (Stating that "[i]t is not essential that a requirements contract containing a minimum purchase quantity also be for exclusive dealings."). If the Co-Pack Agreement only obligated Heinz to submit 12-18 month forecasts and Heinz was free to vary the forecasts even to zero without limitation or restriction, then the Agreement was nothing more than an open-ended offer to sell and lacked consideration. *See City of Louisville,* 482 F.2d at 164. For the parties' agreement to be an enforceable contract, it must have contained a benchmark number to which the buyer and seller were bound, subject only to modifications made in good faith. The planning target is the only estimate of an actual quantity contained in the Agreement. As a result, the jury must have concluded that the planning target was a stated estimate of Heinz's actual requirements. Otherwise, they could not have determined that the contract was enforceable under the Court's instructions.

    b. *The jury's verdict that the requirements contract was not breached is against the clear weight of the evidence.*

If the contract was enforceable because the planning target was a stated estimate, then Heinz breached the contract if its decision to reduce its orders from Bright Harvest was made in bad faith. *See* Idaho Code § 28-2-306. Upon reviewing the relevant case law

and Idaho Code § 28-2-306, the Court instructed the jury that "[a] buyer in a requirements contract acts in good faith if it has a valid business reason for varying its requirements other than dissatisfaction with the contract, even if it results in no further orders." *Jury Instructions* at 21, Dkt. 152. Thus, the jury had no choice but to find that Heinz acted in bad faith if its business reason for not reducing the quantity of orders to zero was dissatisfaction with the contract.

The evidence at trial points to only one conclusion – that Heinz reduced its orders because of its dissatisfaction with the contract. The evidence at trial was clear that the determinative, and perhaps sole, reason for Heinz's decision to reduce the quantity of orders to zero, was its belief that it could produce the sweet potato fries more profitably at its own facility. A buyer expresses dissatisfaction with the contract, and acts in bad faith, when it terminates a requirements contract solely to increase profitability. *See Empire Gas Corp. v. Am. Bakeries Co.*, 840 F.2d 1333, 1341 (7th Cir. 1988) (Stating that good faith "requires at a minimum that the reduction of requirements not have been motivated solely by a reassessment of the balance of advantages and disadvantages under the contract to the buyer.") *See also Park Electrochemical Corp. v. Delco Electronics Corp.*, 65 F. App'x 602, 607 (9th Cir. 2003). (Tallman, J., dissenting)[1] (Stating that "the

---

[1] Judge Tallman's dissent states that, contrary to the majority's opinion, failing to add a clarifying sentence to a jury instruction defining legitimate business reasons was prejudicial error. Judge Tallman's definition of a legitimate business reason is not contradicted by the majority. Rather the majority concludes that the additional sentence did not clarify but simply restated the definition already in the jury (Continued)

buyer's desire for greater profitability, standing alone, is insufficient to establish that the buyer acted in good faith in terminating the requirements contract."). Heinz reduced its demand from Bright Harvest because it determined that it would be more economically advantageous to self-manufacture the sweet potato fries when it had sufficient open capacity in its own manufacturing facilities to do so. TT, p. 888, L10 – p. 890, L19. In other words, Heinz simply reassessed the advantages and disadvantages of the Agreement, determined that it was not as economically advantageous to order from Bright Harvest as it had originally believed, and therefore reduced its orders to zero. Under the Court's instructions, such a decision necessarily added up to bad faith.

The Court's decision does not mean that Heinz had no choice but to slavishly continue ordering fries at, or near, the original contract estimates.  Certainly, there are a number of reasons which would have justified a decision by Heinz to substantially decrease its orders – even to zero.  For example, if Heinz had reduced its orders in response to the lower consumer demand for sweet potato fries, it would have been acting in good faith. *See Empire Gas Corp.* 840 F.2d at 1339. (Stating that a reduction in consumer demand can be a valid business reason to reduce requirements.). However, a reduction in consumer demand cannot be used to justify a significantly disproportionate

---

instruction. Therefore, the Court finds Judge Tallman's commentary regarding good faith and legitimate business reasons persuasive even though it is contained in a dissenting opinion.

reduction in orders, since that would indicate dissatisfaction with the contract, rather than a mere response to the market. Here, Heinz conceded that there continued to be lower but substantial consumer demand even after it reduced its orders to zero. *Response to Motion to Alter Judgment* at 6, Dkt. 169. Therefore, the trial evidence showed that the reduction was not made in good faith because it was significantly disproportionate to the fluctuation in consumer demand.

## CONCLUSION

Under these circumstances, the Court concludes that altering the judgment is inappropriate. The Court does not find that Bright Harvest has presented the Court with newly discovered or previously unavailable evidence, or that there is an intervening change in controlling law." *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). Thus, in order to alter or amend the judgment in favor of Bright Harvest, the Court would need to conclude that the jury correctly found that a contract existed, but then incorrectly found that Heinz did not breach the contract. The Court simply cannot parse the jury's verdict that closely. That the jury's verdict was internally inconsistent and at odds with the evidence, could also mean that the jury was mistaken in reaching its first conclusion – that the parties had entered into a binding requirements contract.

Instead, the Court can confidently find that the jury's conclusion that Heinz's reduction of orders from Bright Harvest to zero was made in good faith is not supported by the evidence at trial. Thus, weighing the evidence as the Court saw it, the Court's

conscientious opinion is that the verdict is contrary to the clear weight of the evidence. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Therefore, the Court will order a new trial.

## ORDER

**IT IS ORDERED:**

1. Bright Harvest's Motion (Dkt. 165) to Alter the Judgment is **DENIED**, but Bright Harvest's Motion for New Trial is **GRANTED**.

2. The motions related to attorney fees (Dkts. 155, 171 and 172) are **DENIED WITHOUT PREJUDICE**. The motions may be re-filed depending upon the outcome of the new trial.

3. The Court will enter a separate notice of hearing for the purpose of choosing a date for the new trial.

DATED: August 24, 2015

B. Lynn Winmill
Chief Judge
United States District Court