UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIGHT HARVEST SWEET POTATO COMPANY, INC., and Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>H. J. HEINZ COMPANY, L.P., a Pennsylvania limited partnership,<br><br>Defendant. | Case No. 1:13-cv-00296-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has several motions in limine before it (Dkts. 203-215). The Court will address each below.

## ANALYSIS

1. **Bright Harvest's MIL 1-5 (Prior Motions)**

Bright Harvest asks the Court to "take notice" of 5 of its motions in limine filed before the first trial. Bright Harvest makes no further argument than what it made during the first round. The Court assumes this means Bright Harvest wants to preserve the record on these motions, and wants the Court's earlier Orders to apply to the second trial. Heinz appears to agree that the court should take notice of these earlier decisions.

**MEMORANDUM DECISION AND ORDER - 1**

Under these circumstances, the Court will note that its earlier rulings apply to the second trial, and the parties are referred to Dkts. 120 and 125 for the Court's ruling on these motions – unless the Court states otherwise below or in a separate order.

2. **Bright Harvest's MIL 6 (Argument of Counsel During Opening Statement)**

Counsel for both parties seem to understand the limited nature of an opening statement. In fact both parties cite *U.S. v. Dinitz*, 424 U.S. 600 (1976) for the proposition that "[a]n opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument."

Bright Harvest suggests that counsel for Heinz went beyond these guidelines in the first trial, and Bright Harvest asks the Court to prevent counsel from doing it again in the second trial. Heinz responds by arguing this is not a proper motion in limine because argument by counsel is not evidence. Heinz suggests counsel for Bright Harvest can simply object during counsel's opening statement if he believes counsel is arguing the case.

The Court will grant the motion by stating that counsel seem to understand the purpose of an opening statement, and the Court will hold them to that. This will apply to both sides. Counsel may object to arguments in opening statements, and the Court will sustain such objections. The Court simply cautions counsel that what is good for the goose is good for the gander – or possibly more appropriate, what is sauce for the goose is sauce for the gander.

**MEMORANDUM DECISION AND ORDER - 2**

3. **Bright Harvest MIL 7 (Breach of the Co-Pack Agreement)**

The Court will issue a ruling on this motion after it receives the supplemental briefs on judicial estoppel.

4. **Bright Harvest MIL 8 (Enforceability of the Co-Pack Agreement)**

The Court will issue a ruling on this motion after it receives the supplemental briefs on judicial estoppel.

5. **Bright Harvest MIL 9 (Rolling Forecasts as the Stated Estimate)**

Bright Harvest asks the Court to preclude Heinz from arguing that the rolling forecasts were the stated estimate for a requirements contract. It appears Bright Harvest is making this argument because Heinz made that suggestion in opposition to Bright Harvest's motion for new trial. That was an issue for the post-trial motions because the verdict form did not require the jury to specifically indicate whether the contract was a requirements contract, and if so what they determined was the stated estimate.

This should be a non-issue in the next trial because Heinz is not arguing there was a requirements contract. In fact, in its response brief Heinz suggests that the Settlement Agreement could be the stated estimate, but it never suggests the rolling forecasts are the stated estimate.

However, to the degree Heinz does intend to argue there was a requirements contract, and that the rolling forecasts are the stated estimate, the Court will grant the motion. As the Court instructed the jury in the first trial, and will instruct the jury in the second trial, the estimate must be stated. As the Court explained in its decision granting a new trial, a stated estimate creates an enforceable requirements contract when an

MEMORANDUM DECISION AND ORDER - 3

agreement is not exclusive because the estimate acts as consideration. *City of Louisville v. Rockwell Mfg. Co.*, 482 F.2d 159, 164 (6th Cir. 1973); cf. *Amber Chemical, Inc. v. Reilly Industries, Inc., No. 106CV06090OWWSMS*, 2007 WL 512410, at *8 (E.D. Cal. Feb. 14, 2007) (Stating that "[i]t is not essential that a requirements contract containing a minimum purchase quantity also be for exclusive dealings."). If the Co-Pack Agreement only obligated Heinz to submit 12-18 month forecasts and Heinz was free to vary the forecasts even to zero without limitation or restriction, then the Agreement was nothing more than an open ended offer to sell and lacked consideration. *City of Louisville*, 482 F.2d at 164. For the parties' agreement to be an enforceable contract, it must have contained a benchmark number to which the buyer and seller were bound, subject only to modifications made in good faith. The rolling forecasts were not stated in the Co-Pack Agreement. Accordingly, the motion is granted.

6.     **Bright Harvest MIL 10 (Undisclosed Subjective Intent Evidence)**

Prior to the first trial, the Court granted Bright Harvest's request that Heinz be prevented from introducing its subjective, undisclosed, intent in entering the Co-Pack Agreement. That ruling will apply to the second trial as well. Dkt. 125, pp. 7-9.

This ruling will apply to Bright Harvest's specific request that Heinz be precluded from presenting evidence and testimony about other potential co-packers' requirement for a minimum quantity guarantees or lack thereof. Documents, such as Exhibit 2171, and testimony about Heinz's subjective intent about such documents, are not admissible unless it was disclosed to Bright Harvest.

7.     **Bright Harvest MIL 11 (Vouching for Witnesses)**

**MEMORANDUM DECISION AND ORDER - 4**

Bright Harvest asks the Court to preclude opposing counsel from vouching for witnesses. Both parties recognize that Idaho Rule of Professional conduct 3.4(e) prohibits counsel from opining about the credibility of a witness. The motion is granted, and the Court will order all counsel to abide by that rule. Counsel may object during trial if opposing counsel disobeys this rule, and the Court will sustain such an objection.

8.  **Heinz MIL 1 (Heinz Failure to Notify Bright Harvest Decision not to Order Products from the 2012 Crop Year Prior to April 2012)**

In an earlier Order, the Court ruled that in order for Bright Harvest to recover lost profits, it must show that Heinz breached the Co-Pack and caused lost profits through willful misconduct or gross negligence. Dkt. 120, pp. 5-6. This ruling was based upon the Co-Pack language that neither party "shall be responsible or liable for the lost profits of the other party in case of a breach of this Agreement, unless the party breaching this Agreement has caused such lost profits due to its willful misconduct or gross negligence. Id. at p. 5. This same ruling will apply to the second trial.

With that, Heinz asks the Court to exclude certain exhibits that relate to Heinz's delay in notifying Bright Harvest that it would not purchase any product for the October 2012 crop year. Heinz now argues that because evidence at the first trial clearly established that Bright Harvest suffered no damages as a result of Heinz's alleged delay, the evidence is irrelevant and either prejudicial, confusing, misleading or a waste of time.

The exhibits are emails and meeting agenda items related to Heinz's decision to stop purchasing product from Bright Harvest. The exhibits can be read to explain Heinz's strategy for doing so, which could be relevant to whether Heinz acted with willful

**MEMORANDUM DECISION AND ORDER - 5**

misconduct or gross negligence. Moreover, the exhibits may help tell the entire story about how those decisions were made, which does just the opposite of confusing, misleading or wasting the jury's time. Under these circumstances, the Court is not convinced, without further context that may be provided during the trial, that the exhibits should be excluded pursuant to Fed. R. Evid. 401 and 403. Accordingly, the motion will be denied. However, Heinz may renew the objection during trial, and the Court may reassess its decision.

9.    **Heinz MIL 2 (Non-Binding 10 Million Pound Planning Target)**

Heinz asks the Court to prevent Bright Harvest from presenting evidence that the "non-binding planning target of 10 million pounds" is the stated estimate. Heinz suggests it will provide the jury with several other potential stated estimates. These other stated estimates fit Heinz's theory of the case.

Even assuming Heinz can present evidence of other potential stated estimates, that does not preclude Bright Harvest from presenting its theory of the case – which includes evidence and argument that the 10 million pound planning target is the stated estimate. The Co-Pack Agreement is enforceable if it contained a term which measures the quantity of sweet potato fries to be sold by a stated estimate of what Heinz required. A reasonable jury could conclude that the 10 million pound planning target specifically listed in the Co-Pack Agreement was that estimate. In fact, based upon the evidence presented at the first trial, that was the only stated estimate the jury could have found. Such evidence must be allowed by Bright Harvest.

**MEMORANDUM DECISION AND ORDER - 6**

The Court will take this opportunity to make a statement that must be considered during the second trial. During the first trial, Heinz often objected to Bright Harvest offering evidence essentially because it contradicted Heinz's theory of the case. That is not a proper objection to evidence. If evidence is otherwise admissible, each party will be allowed to offer the evidence that supports their respective theory of the case, and the jury will determine which theory to believe. The Court will not entertain these types of objections during the second trial.

10.   **Heinz MIL 3 (Damages Based on Product Purchases Larger than Heinz's Actual Requirements)**

Heinz asks the Court to prevent Bright Harvest from presenting evidence of damages beyond the amount of Heinz's actual requirements from October 1, 2012 through the end of the contract. Heinz's argument has a clear logic: If Heinz's actual need for product during this product was approximately 5.0 million pounds, it could not have been required to purchase the full stated estimate of approximately 30.0 million pounds through the end of the contract. But this logic ignores the statutory language regarding an estimate in Idaho Code § 28-2-306. As Bright Harvest points out, the Idaho Supreme Court explained the distinction between an estimate and a stated maximum in an output contract. The Idaho Supreme Court indicated that Idaho Code § 28–2–306(1) governs output contracts, and states in pertinent part:

> A term which measures the quantity by the output of the seller . . . means such actual output . . . as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output . . . may be tendered or demanded.

**MEMORANDUM DECISION AND ORDER - 7**

*Griffith v. Clear Lakes Trout Co.*, 200 p.3d 1162, 1169 (Idaho 2009). The court went on to explain that Comment 3 to I.C. § 28–2–306 further indicates:

> If an estimate of output or requirements is included in the agreement, no quantity unreasonably disproportionate to it may be tendered or demanded. Any minimum or maximum set by the agreement shows a clear limit on the intended elasticity. In similar fashion, the agreed estimate is to be regarded as a center around which the parties intend the variation to occur.

*Id*.

Reading these together, the Idaho Supreme Court explained that "it is clear that a stated estimate is treated differently than a stated maximum in determining damages for an output contract. A stated maximum sets an upper limit on what the parties intend the elasticity of the seller's output to be, whereas a stated estimate is the basis from which contract damages are to be centered around." *Id.* Although the court in *Griffith* determined that there was no estimate, it is clear to this Court that had there been one, the Idaho Supreme Court would have tied damages to the estimate.

However, simply centering Bright Harvest's damages around the stated estimate is not the end of the inquiry. If Heinz's need for product was actually far less during the last few years of the contract, it would not be held responsible for the difference between its actual requirements and the stated estimate, unless it artificially reduced its requirements in bad faith.  And, the Court believes Bright Harvest will have a very difficult time convincing a jury that Heinz acted in bad

**MEMORANDUM DECISION AND ORDER - 8**

faith in not self-producing more than it did between September 2012 and November 2015. Thinking (perhaps mistakenly) that it was free from any obligation to purchase product from Bright Harvest, Heinz concluded that market conditions dictated that it self-produce only 5.0 million pounds of sweet potatoes. It is difficult to see how Bright Harvest could persuade the jury that this analysis was made in bad faith. However, the law appears to allow Bright Harvest to make that argument. Accordingly, the Court will deny the motion, but will certainly monitor the evidence closely and may grant a Rule 50 motion on this issue if Bright Harvest is unable to present any evidence of bad faith in Heinz's decision to self-produce only 5.0 million pounds of sweet potato fries.

11. **Heinz MIL 4 (Settlement Agreement Ambiguous or Heinz committed to purchasing products from bright harvest after October 2012)**

The Court will issue a ruling on this motion after it receives the supplemental briefs on the long-term option contract issue.

12. **Heinz MIL 5 (Lost Profits Means Gross Profits)**

Before the first trial, the Court issued a ruling on lost profits. Here, Heinz essentially asks the Court to reconsider that ruling because "there is substantial evidence that the Court did not consider in its previous ruling, which indicates that the parties understood 'lost profits' to mean 'gross profits' and 'margin' to mean 'net profits.'" *Def Br.,* Dkt. 207, p. 3. The problem with Heinz's argument is that the Court need not, and must not, consider this additional evidence where the parties' intent can be ascertained from the contract itself.

MEMORANDUM DECISION AND ORDER - 9

As the Court explained in its earlier ruling, the Court's role in interpreting a contract is to effectuate the mutual intent of the contracting parties. *Straub v. Smith*, 175 P.3d 754, 758 (Idaho 2007). A court should first look to the four corners of the contract to ascertain the intent of the contracting parties. *See id*. If the contract's language is clear and unambiguous on its face, the intent of the parties is most readily ascertained from simply reading the contract, which must be read as a whole. *Id*. *Kennewick*, 880 F.2d at 1032. Here, the Court was able to make that determination by looking at the contract. The Court will repeat its earlier order here.

The Co-Pack Agreement does not define "profits." And it is unclear from Section 16(e) alone whether the term "profits" refers to gross profits or net profits. Net profits, unlike gross profits, are adjusted for additional expenses, such as reasonable overhead. See BLACK'S LAW DICTIONARY (10th ed. 2014). And the U.C.C., as adopted in Idaho, authorizes the recovery of "profit (including reasonable overhead)" when damages are inadequate to put the seller in as good a position as performance would have done. See IDAHO CODE ANN. § 28-2-708 (2015).

However, this does not mean that whenever parties refer to "lost profits" in drafting their contract, they necessarily include reasonable overhead. The statute simply authorizes an award of profits and reasonable overhead, i.e. gross profits, when damages are otherwise inadequate. It does not dictate that "lost profits" always includes reasonable overhead. This much is made clear by the fact that the Co-Pack Agreement references "lost profits," not "profits (including reasonable overhead)." But as noted above, a court should construe a contract in a manner that gives full meaning and effect to all its

**MEMORANDUM DECISION AND ORDER - 10**

provisions and avoid an interpretation that renders part of the contract meaningless or unreasonable. *Kennewick*, 880 F.2d at 1032.

The Purchase Order, as explicitly incorporated into the Co-Pack Agreement, separately mentions overhead and profits. To hold that the term "profits" includes overhead would make language in the Purchase Order superfluous. Thus, in order to give meaning to each word as used in the contract, the term "profit" in Section 16(e) does not include overhead. The Court need not, and should not, sift through the emails cited by Heinz to look for a different conclusion.

Additionally, the Court will deny Heinz's request that Bright Harvest be prevented from seeking lost profits because Bright Harvest did not allege willful misconduct or gross negligence. This is the exact same argument Heinz made before the first trial, and the Court will simply restate its decision here.

In its amended complaint, Bright Harvest alleges that it "suffered damages including lost profit." Am. Compl. at 5, Dkt. 10. Bright Harvest's allegation must be "a short and plain statement of the claim" that shows it is entitled to relief. See FED. R. CIV. P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).

The Court finds that Heinz had fair notice of Bright Harvest's claim. The unambiguous language of the Co-Pack Agreement notifies both parties that lost profits

MEMORANDUM DECISION AND ORDER - 11

may only be recovered by showing that the other party breached the Co-Pack Agreement through their willful misconduct or gross negligence. As a result, Heinz was aware that Bright Harvest would be resting its claim for lost profits on those grounds. Accordingly, the motion will be denied.

13. **Heinz MIL 6 (Damages Different from Original Calculation Provided in Discovery and at the Depositions of King and Baker)**

During the first trial, Bright Harvest witnesses presented evidence of different lost profits than those used during discovery. The witnesses gave explanations for the difference, including why they decided to change certain amounts included in the totals. Heinz asked the Court to preclude Bright Harvest from presenting the updated information during the first trial. The Court denied that motion, indicating that so long as the witnesses were qualified to testify about the amounts they could present the evidence. Heinz could rebut the evidence by questioning the witnesses about why they made the changes.

Heinz has presented the Court with no case law or other authority supporting its request that the Court change course. The Court will adhere to its earlier ruling. The motion is denied.

## ORDER

**IT IS HEREBY ORDERED:**

1. The motions in limine (Dkts. 209, 210, 213, 214 and 215) are **GRANTED**.
2. The motions in limine (Dkts. 203, 204, 205, 207, and 208) are **DENIED**.

3. The Court will reserve ruling on motions in limine (Dkts. 206, 211 and 212) until it receives the briefs on judicial estoppel and the long-term option contract issue.

DATED: February 10, 2016

_____
B. Lynn Winmill
Chief Judge
United States District Court