UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIGHT HARVEST SWEET POTATO COMPANY, INC., and Oregon corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>H. J. HEINZ COMPANY, L.P., a Pennsylvania limited partnership,<br><br>　　　　　　　　Defendant. | Case No. 1:13-cv-00296-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it motions in limine (Dkts. 206, 211 and 212), as well as related supplemental briefs on the burden of proof of good faith, preclusion of new evidence and theories, and evidence that the Co-Pack Agreement was a long-term option contract.

**MEMORANDUM DECISION AND ORDER - 1**

## ANALYSIS

1. **Co-Pack Agreement as Option Contract**

Although not always consistent, Heinz has, throughout this litigation, suggested or inferred that the Co-Pack Agreement is an option contract, a long-term option contract, an unenforceable long-term option contract, or something to that effect. To finally put the matter to bed, the Court asked Heinz for legal authority showing that the Co-Pack Agreement could be an enforceable long-term option contract if it lacked consideration. Heinz filed a brief but provided no legal authority on that issue.

Instead, Heinz argues the Co-Pack Agreement was an enforceable option contract because it was supported by sufficient consideration. Heinz first contends consideration is found in several events occurring before the Co-Pack Agreement became enforceable on December 7, 2009. But Heinz never explains how these past events constitute bargained for consideration inducing Bright Harvest to hold out the Co-Pack Agreement as an option contract. *See, e.g., Collord v. Cooley*, 451 P.2d 535, 538 (Idaho Sup. Ct. 1969) ("A promise is never held to be made enforceable by reason of past events unless those events have such a relation to the promise as to constitute its inducing cause.") (quotation marks and citation omitted); 4 Williston on Contracts § 8:11 (4th ed. 2015) ("In short, the doctrine that past consideration is no consideration represents the overwhelming weight of authority and has represented the weight of authority since the early common law"). These events do not provide sufficient consideration to allow the Court or a jury to construe the Co-Pack Agreement as a binding option contract.

**MEMORANDUM DECISION AND ORDER - 2**

Heinz next contends consideration is found in Sections 3(ii) and 11 of the Co-Pack Agreement. Section 3(ii) obligated Heinz to provide regular forecast statements to Bright Harvest, on which Bright Harvest would base production. Section 11 obligated Heinz to pay for excess or obsolete material Bright Harvest acquired in reliance on Heinz's forecast. Heinz's option contract theory, however, would freely permit it to reduce its Section 3(ii) forecasts down to zero. A forecast of zero, in turn, would clear Heinz of its Section 11 obligation to pay for excess or obsolete material. Thus, the Court rejects this argument because it would render Heinz's obligations under Sections 3(ii) and 11 illusory. *See, e.g., Thomas v. Cate*, 296 P.2d 1033, 1034 (Idaho Sup. Ct. 1956) ("[A] reservation to either party of an unlimited right to determine the nature and extent of his performance renders his obligation too indefinite for legal enforcement, making it . . . merely illusory.") (quotation marks and citation omitted); 4 Williston on Contracts § 7:7 (4th ed. 2015) ("Where an illusory promise is made . . . it cannot serve as consideration. Even if it were recognized by law, it would impose no obligation, since the promisor always has it within his power to . . . escape performance of anything detrimental to himself or beneficial to the promisee.").

Heinz also contends that consideration is found in the parties' Non-disclosure Agreement (NDA) and cites the Court to *Coulter & Smith, Ltd. v. Russell*, 966 P.2d 852 (Utah Sup. Ct. 1998). Russell involved an option to sell real property in return for the prospective buyer's promise to "proceed posthaste to annex and develop [the property.]" *Id*. at 859. In *Russell*, consideration for the option existed because there was "no reason" for the prospective buyer's promise, "absent the option . . . to purchase the property." *Id*.

**MEMORANDUM DECISION AND ORDER - 3**

In contrast, here the key reason for the NDA was the parties' mutual confidentiality concerns. The Court is therefore not persuaded that Heinz agreed to the NDA in return for Bright Harvest agreeing that the Co-Pack Agreement was a binding option contract.

In sum, the Co-Pack Agreement was not an enforceable option contract. Because this contention lacks factual and legal support and carries a substantial risk of confusing jurors, Heinz is precluded from arguing at trial that the Co-Pack Agreement was an option contract. See Fed. R. Evid. 403.

Heinz also asserts an individual contracts argument. Heinz argued at the February 5, 2016 hearing and throughout its motion that "Heinz and Bright Harvest entered into a new contract each time it ordered and Bright Harvest accepted that order by delivery or otherwise." *Heinz Br.* at 1, Dkt. 267. While that argument may be legally accurate, the Court finds that argument is not relevant. This case concerns whether the Co-Pack Agreement bound the parties, and if so, to what extent. Thus, arguing that each transaction created individual contracts separate from the Co-Pack Agreement is, at best, tangential to this case's primary issues. Any relevance is substantially outweighed by a risk of confusing jurors. Accordingly, the Court will not permit Heinz to argue at trial that new contracts were created in each of the parties' transactions. See Fed. R. Evid. 403.

2. **Bright Harvest MIL 7 (Breach of the Co-Pack Agreement), Bright Harvest MIL 8 (Enforceability of the Co-Pack Agreement), Good Faith and New Theories.**

At the pretrial conference, the Court asked the parties to submit briefs on the burden of proof regarding the requirement that a buyer or seller act in good faith if they

MEMORANDUM DECISION AND ORDER - 4

depart from the stated estimate of a requirements contract. Neither party provided the Court with Supreme Court or Ninth Circuit cases on point, and the Court has not identified any on its own. However, both parties cited *Empire Gas Corp. v. American Bakeries Co.,* 840 F.2d 1333 (7th Cir. 1988), and the Court finds the case instructive.

      The court in *Empire Gas* noted that Empire Gas had the burden of proving its breach of contract claim, and therefore the burden of proving that American Bakeries acted in bad faith when it reduced its requirements to zero. *Empire Gas,* 840 F.2d at 841. The court explained that Empire Gas met that burden by putting on evidence that American Bakeries still had the fleet of trucks and financial wherewithal to go through the conversion process needed to meet its original requirements estimate. *Id.* The court then noted that to avoid a directed verdict, American Bakeries would have had to introduce at least some evidence concerning its reasons for reducing its requirements – which required at a minimum that the reduction not have been motivated solely by a reassessment of the balance of advantages and disadvantages under the contract. *Id.* American Bakeries did not offer any evidence, which essentially allowed the district court to grant the directed verdict.

      Application of the burden of proof in *Empire Gas* comports with this Court's intuitive belief of how the burden should be applied, as well as with well-settled law on the burden of proof of a breach of contract claim. Here, Bright Harvest has the burden of proving its breach of contract claim, which means Bright Harvest has the burden of proving that Heinz acted in bad faith when it reduced its orders to zero. Presumably this could be done through evidence that Heinz provided no explanation for this step, and

**MEMORANDUM DECISION AND ORDER - 5**

from the deposition testimony of Heinz officials as to why the orders were so reduced. Then, to avoid a directed verdict, Heinz would need to provide evidence of good faith. But this is not necessarily burden shifting as suggested by Bright Harvest. If Bright Harvest provides the jury with evidence of bad faith, and Heinz provides the jury with evidence of good faith, the jury will need to weigh that evidence and make its decision. However, the burden will always remain with Bright Harvest because it has the burden of proving its breach of contract claim.

Turning to the issue of presenting evidence of good and bad faith by the parties, the Court notes that the issue is a bit nuanced. Obviously, Bright Harvest must present evidence of bad faith, and the Court will allow it do so. If Bright Harvest fails to offer any evidence of bad faith, the Court will direct a verdict in favor of Heinz. This is unlikely considering the evidence from the first trial, and the Court assumes Bright Harvest will clear that first hurdle.

The Court will not then prevent Heinz from submitting evidence of good faith. Although Bright Harvest asks the Court to do that, either because Heinz did not present such evidence during the first trial or because the jury did not believe such evidence, Bright Harvest has not provided the Court with authority requiring it to do so. At most, Bright Harvest suggests that such a step is within the Court's discretion. Under the circumstances of this case, the Court believes Heinz must be allowed to present evidence of good faith, noting that if that evidence contradicts evidence from the first trial, Bright Harvest will be free to impeach a witness where appropriate.

**MEMORANDUM DECISION AND ORDER - 6**

However – and here is where things get a bit nuanced – Heinz may not present evidence or argue that it acted in good faith because it believed that the Co-Pack Agreement was something other than a requirements contract that somehow unilaterally allowed Heinz to reduce its orders to zero. That is not the good faith question. The jury will only be asked to decide whether Heinz acted in good faith if it has already found that the parties' intention in executing the Co-Pack Agreement was to create a binding requirements contract. Simply put, if the jury concludes that Heinz intended for the Co-Pack Agreement to be a binding requirements contract, it cannot then conclude that Heinz believed, in good faith, that it was not a binding requirements contract.  That would be an utterly inconsistent verdict.

As noted above, the Court will not allow Heinz to present evidence or argue that the Co-Pack Agreement is anything other than a requirements contract, or a failed attempt to create a contract and therefore not an enforceable contract. Allowing argument or evidence that the Co-Pack Agreement was anything else is not supported by the law, and is therefore irrelevant and will only confuse the jury. Fed. R. Evid. 402, 403.

This ruling addresses the issues brought up in Bright Harvest MIL 7 (Breach of the Co-Pack Agreement), and Bright Harvest MIL 8 (Enforceability of the Co-Pack Agreement). In those motions, Bright Harvest suggests that Heinz has argued that the Co-Pack Agreement is an enforceable contract that was breached, and that Heinz should be judicially estopped from arguing otherwise at the second trial. The Court did not understand Heinz's previous arguments to be that succinct, and all the motions in limine for the second trial seem to support the Court's belief. Nevertheless, the matter is now

**MEMORANDUM DECISION AND ORDER - 7**

cleared up – Heinz may argue that the Co-Pack is a requirements contract that it did not breach because it acted in good faith, but Heinz may not argue that the Co-Pack Agreement is any other type of contract, and it may not make such an argument in the guise of arguing good faith. Alternatively, Heinz may argue that the Co-Pack Agreement is a failed attempt to create a contract, and therefore not an enforceable contract at all.

3.  **Heinz MIL 4 (Settlement Agreement Ambiguous or Heinz committed to purchasing products from bright Harvest after October 2012)**

Before the first trial, neither party suggested the May 2011 settlement agreement ("Settlement Agreement") was ambiguous, and the Court noted that it was unaware of an ambiguity. *Court Order*, Dkt. 125, p.9. Accordingly, the Court ruled that evidence of a party's subjective intent in entering into the Settlement Agreement was irrelevant. Both parties still suggest the Settlement Agreement is unambiguous, but each party suggests it unambiguously states something very different.

In its motion in limine, Heinz argues that the Settlement Agreement unambiguously states that Heinz had no obligation to purchase product after October 2012. Heinz asks the Court to prevent Bright Harvest from presenting evidence to the contrary or evidence that the Settlement Agreement is ambiguous. In response, Bright Harvest argues the Settlement Agreement states no such thing, and asks the Court to prevent Heinz from presenting evidence that it does. Thus, the Court is now called upon to determine whether the terms of the Settlement Agreement are ambiguous as a matter of law. *Carpenters Pension Trust Fund v. Underground Constr. Co.*, 31 F.3d 776, 778 (9th Cir.1994).

**MEMORANDUM DECISION AND ORDER - 8**

A disagreement about a contract's meaning does not necessarily render the contract ambiguous. *Int'l Union of Bricklayers & Allied Craftsman Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir.1985). To be ambiguous, the terms of the contract must be susceptible to two different and reasonable interpretations – each being consistent with the language of the contract as a whole. *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir.1989) (citation omitted). "If a contract's terms are clear and unambiguous, the contract's meaning and legal effect are questions of law to be determined from the plain meaning of its own words." *Bream v. Benscoter*, 79 P.3d 723, 726 (Idaho 2003).

The Court agrees with Bright Harvest that the only reasonable interpretation of the Settlement Agreement forecloses any argument that Heinz had no obligation to purchase product after October 2012. It is undisputed that the original term of the Co-Pack Agreement was December 1, 2009 – November 30, 2015. The Settlement Agreement required Heinz to "revise its forecast and provide some firm orders," and required Bright Harvest to "support Heinz in acquiring some raw sweet potatoes in May and June," as set forth in Exhibit A to the Settlement Agreement. The Settlement Agreement goes on to state,

> In consideration of this accommodation, Bright Harvest acknowledges and agrees that under the Co-Pack Agreement and otherwise, (i) Heinz is under no obligation to commit any volume to Bright Harvest, except as set forth in Exhibit A and any 5 weeks of firm production orders as set forth in any subsequent electronic rolling weekly demand files submitted to Bright Harvest; (ii) Heinz is permitted to self-manufacture Products as defined under the Co-Pack Agreement and any frozen processed sweet potatoes; (iii)

**MEMORANDUM DECISION AND ORDER - 9**

> Heinz has satisfactorily performed and is not now nor at any time
> been in breach of Heinz's obligations to Bright Harvest under the
> Co-Pack Agreement.

*Trial Ex.* 13. Heinz suggests this language indicates Heinz had no obligation to purchase product from Bright Harvest beyond what was stated in Exhibit A, which had no forecasts beyond April 2012.

But the Settlement Agreement does not end there.  It goes on to state that each party releases and discharges the other party from any claims, damages, liability, etc. accruing on or before April 25, 2011, the effective date of the Settlement Agreement. *Id.* And, notably, it then states that "[e]ach party's respective obligations and duties under the [Co-Pack] Agreement and each of the Related Agreements, . . . shall continue on and after the Effective Date and this mutual release does not discharge or alter the duties and obligations of the parties under the [Co-Pack] Agreement or Related Agreements but releases any breach of such agreements to the extent arising prior to the Effective Date." *Id.*

The Settlement Agreement simply resolved any disputes that arose on or before April 25, 2011. It did not amend the Co-Pack Agreement to reduce the term from November 30, 2015 to April 2012. The language about the parties' respective obligations and duties continuing after the effective date of the Settlement Agreement would be nonsensical if that were the case. And as noted above, to be reasonable, an interpretation of a contract must be consistent with the language of the contract as a whole. *Kennewick*, 880 F.2d at 1032. The language of the Settlement Agreement only makes sense if it is

**MEMORANDUM DECISION AND ORDER - 10**

interpreted to mean the Co-Pack Agreement will continue through November 30, 2015 as originally stated in that agreement.

The question for the jury is still whether Heinz may source sweet potato fry products from its own factories or from any other source during the term of the Co-Pack Agreement without restriction, or whether Heinz is limited to doing so only when its demands exceed Bright Harvest's capacity, in which case it is an enforceable requirements contract in which the quantities to be provided under the contract is set by the stated estimate set forth in the Co-Pack Agreement.

Heinz's alternative arguments about the Co-Pack Agreement are unsupported by the evidence. Heinz cannot argue that the Settlement Agreement is consistent with Heinz's interpretation that it had the right to self-manufacture all products after October 2012 without limitation or restriction pursuant to the original terms of the Co-Pack Agreement because that argument necessarily assumes facts that would make the Co-Pack Agreement unenforceable. As noted above, the Court will not allow Heinz to make that argument. Likewise Heinz cannot argue that the Settlement Agreement modified the Co-Pack Agreement because the Settlement Agreement says in no uncertain terms that it "does not discharge or **alter** the duties and obligations of the parties under the Agreement . . . ." Settlement Agreement, Dkt. 45-5 (emphasis added).

Accordingly, Heinz's motion will be denied, and Heinz shall not submit evidence or argue that the Settlement Agreement terminated Heinz's obligation to purchase product after October 2012.

**MEMORANDUM DECISION AND ORDER - 11**

## ORDER

**IT IS HEREBY ORDERED:**

1. The motion in limine (Dkts. 206) is **DENIED**.

2. The motions in limine (Dkts. 211 and 212) are **GRANTED in part** and **DENIED in part** as explained above.

DATED: February 18, 2016

B. Lynn Winmill
Chief Judge
United States District Court