UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIGHT HARVEST SWEET POTATO COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> H.J. HEINZ COMPANY, L.P., <br><br> Defendant. | Case No. 1:13-cv-00296-BLW <br><br> **MEMORANDUM DECISIOIN AND ORDER** |

# INTRODUCTION[1]

The Court has before it Defendant's Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b) and/or to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (Dkt. 326), Plaintiff's Second Rule 59 Motion to Alter or Amend Judgment and for New Trial (Dkt. 327), and Defendant's Motion for New Trial Pursuant to Federal Rule 59(a) Dkt. 328).

---

[1] In preparing this Order, the Court read 9 post trial briefs submitted by the parties. One of the briefs seemed "not like the others." Upon closer inspection, it appears Heinz's response to Bright Harvest's Rule 59 motion is not fully double-spaced. The Court cautions counsel to follow Local Civil rule 5.2, which requires double-spacing.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

A second trial in this case recently ended. Much of the background of the case is set forth in the Court's earlier decision granting a new trial. But the Court will outline the background again in limited detail here.

This case involves a breach of contract claim brought against Heinz by Bright Harvest. Bright Harvest alleges Heinz breached the Co-Pack Agreement when they stopped purchasing sweet potato fries prior to its expiration. Bright Harvest and Heinz signed the Co-Pack Agreement on December 7, 2009. The Co-Pack Agreement set terms, conditions, and prices for Bright Harvest to produce sweet potato fries under Heinz's Ore-Ida label. (Dkt. 45-2, p. 1).

The Agreement set forth that Heinz "shall place purchase orders with Co-Packer [Bright Harvest], and Co-Packer shall sell and deliver to Heinz, quantities of the products [sweet potato fries] under the terms of this Agreement." (Dkt. 10-1, p. 4). The term of the Agreement was from December 1, 2009 until November 30, 2015. (Dkt. 10-1, p. 4). The Agreement established a "non-binding planning target of 10 million pounds of sweet potato fries per year," and indicated that it was "the intent of the Parties that Heinz will deliver to Co-Packer purchase orders for such Products as hereinafter provided, subject to the current capacity of Co-Packer to produce such Products." (Dkt. 10-1, p. 5). In addition, Heinz was to provide rolling weekly demand files with 5 weeks of firm production orders and 8 weeks of forecast. (Dkt. 10-1, p. 5). No purchase order could exceed 50% of Bright Harvest's current forecasted volume without mutual consent. (Dkt.

10-1, p. 5). Further, Heinz was to provide Bright Harvest 12 to 18 month rolling forecasts quarterly for operational management and capacity planning. (Dkt. 10-1, p. 6).

Bright Harvest began supplying Heinz with sweet potato fries in 2009. In the first year of the contract, Bright Harvest produced approximately half of the requested 400,000 pounds of sweet potato fries, and in 2010, they produced 6 million pounds for Heinz. (Dkt. 45-1, p. 5). While the Agreement was still in effect, Heinz began producing sweet potato fries in its Ontario, Oregon facility. (Dkt. 45-1, p. 5). And, in March 2011, it submitted a 13-month rolling forecast to Bright Harvest requesting only 4.1 million pounds of sweet potato fries between April 2011 and 2012. (Dkt. 45-1, p. 6). Sweet Harvest claimed that this drop in requested production constituted a breach of the Co-Pack Agreement. To settle this dispute, Heinz drafted a letter revising its forecast from 4.1 million pounds to over 7 million pounds, which Bright Harvest signed. (Dkt. 45-1, p. 6). However, beginning in July of 2011, Heinz provided Bright Harvest with 12-18 month forecasts showing zero volume for all products after September 2012. (Dkt. 45-1, p. 8). Regarding this as a breach of the Co-Pack Agreement, Bright Harvest filed a breach of contract claim against Heinz in July 2011.

A jury trial was held in March 2015. At the conclusion of the trial, the jury was given a special verdict form containing three questions. (Dkt. 153-1). The first question required the jury to determine whether or not the Co-Pack Agreement was an enforceable contract. The jury answered that it was. The second question asked the jury to decide whether or not Heinz had breached the Co-Pack Agreement. The jury answered that it

had not. As a result, the third question regarding the amount of damages was not answered by the jury.

Bright Harvest then filed a motion to amend the judgment, or, in the alternative, for a new trial. The Court granted a new trial. The second trial was conducted in February/March 2016. The jury in the second trial determined that the Co-Pack Agreement between the parties was an enforceable requirements contract, and that Heinz breached the contract. The jury then awarded damages of $976,370.52 for lost fixed overhead, and $238,518.56 for lost profits. Heinz now asks for judgment as a matter of law. Both parties also ask the Court to alter or amend the judgment, or for a new trial.

## LEGAL STANDARD

The legal standards for a Rule 50(b) motion, a Rule 59(a) motion, and a Rule 59(e) motion are similar but not identical. The Court will set forth the legal standard for each motion as it separately addresses them below.

## ANALYSIS

1.  **Heinz's Motion for Judgment on the Pleadings or to Alter or Amend Judgment**

When a court does not grant a Rule 50(a) motion during trial, which was the case here, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). A party may then file a renewed motion under Rule 50(b) and may include a request for a new trial under Rule 59. Id.

**MEMORANDUM DECISION AND ORDER - 4**

The Court will deny Heinz's Rule 50(b) motion for essentially the same reasons explained in the Court's earlier decision denying the Rule 50(a) motion during trial. The Co-Pack Agreement was not illusory for lack of a specific price or quantity. A contract may be enforced even where there is a lack of specific agreement as to price. "The parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time for delivery if . . . the price is left to be agreed by the parties and they fail to agree. . . ." I.C. § 28-2-305(1)(b). Exhibit C to the Co-Pack Agreement provided a method or process for determining price on a quarterly and annual basis. Each quarter Bright Harvest would provide the variable cost element from its records and then each year the parties would agree on a conversion cost factor to apply for determining the final purchase price.

The same is true for the volume of sweet potatoes Bright Harvest was required to make available to Heinz. As the Court explained in its ruling on the Rule 50(a) motion, Bright Harvest was subject to the same good faith requirements as Heinz in terms of the stated estimate. Under these circumstances, the Co-Pack Agreement was not illusory.

Regarding bad faith, as the Court explained in its ruling on the motions in limine, given the lack of Supreme Court and Ninth Circuit cases on point, the Court and the parties have relied upon *Empire Gas Corp. v. American Bakeries Co.*, 840 F.2d 1333 (7th Cir. 1988) as instructive. In that case, the court noted that Empire Gas had the burden of proving its breach of contract claim, and therefore the burden of proving that American Bakeries acted in bad faith when it reduced its requirements to zero. *Empire Gas*, 840 F.2d at 841. The court explained that Empire Gas met that burden by putting on evidence

**MEMORANDUM DECISION AND ORDER - 5**

that American Bakeries still had the fleet of trucks and financial wherewithal to go through the conversion process needed to meet its original requirements estimate. *Id*. The court then noted that to avoid a directed verdict, American Bakeries had to introduce at least some evidence concerning its reasons for reducing its requirements – which required at a minimum that the reduction not have been motivated solely by a reassessment of the balance of advantages and disadvantages under the contract. *Id*. American Bakeries did not offer any evidence, which essentially allowed the district court to grant the directed verdict.

>   Applying that same test here, Bright Harvest had the burden of proving its breach of contract claim by proving that Heinz acted in bad faith when it reduced its orders to zero. The testimony of Tim Hensley was sufficient to meet that burden. A buyer acts in bad faith if it reduces its purchases to zero because it reassessed the advantages and disadvantages of the contract, or its motivation was solely to increase profitability. *Jury Inst. 18*, Dkt. 303. Mr. Hensley testified that Heinz used a corporate model to reassess its purchases, which a jury could have reasonably determined was an assessment of the advantages and disadvantages of the contract. That assessment, coupled with Heinz's decision to reduce its orders to zero, is sufficient to find bad faith on the part of Heinz.

>   As to Heinz's argument that the Co-Pack Agreement does not obligate Heinz to purchase sweet potatoes from Bright Harvest after 2012, the Court will simply restate its earlier ruling rejecting this argument. The Court recognizes Heinz's belief that it must make this argument in its Rule 50(b) motion, but the renewed motion has not persuaded the Court to change its position. The only reasonable interpretation of the Settlement

**MEMORANDUM DECISION AND ORDER - 6**

Agreement forecloses any argument that Heinz had no obligation to purchase product after October 2012. It is undisputed that the original term of the Co-Pack Agreement was December 1, 2009 – November 30, 2015. The Settlement Agreement required Heinz to "revise its forecast and provide some firm orders," and required Bright Harvest to "support Heinz in acquiring some raw sweet potatoes in May and June," as set forth in Exhibit A to the Settlement Agreement. The Settlement Agreement goes on to state that in consideration of this accommodation, Bright Harvest acknowledges and agrees that under the Co-Pack Agreement and otherwise, (i) Heinz is under no obligation to commit any volume to Bright Harvest, except as set forth in Exhibit A and any 5 weeks of firm production orders as set forth in any subsequent electronic rolling weekly demand files submitted to Bright Harvest; (ii) Heinz is permitted to self-manufacture Products as defined under the Co-Pack Agreement and any frozen processed sweet potatoes; and (iii) Heinz has satisfactorily performed and is not now nor at any time been in breach of Heinz's obligations to Bright Harvest under the Co-Pack Agreement.

    The Settlement Agreement goes on to state that each party releases and discharges the other party from any claims, damages, liability, etc. accruing on or before April 25, 2011, the effective date of the Settlement Agreement. It then states that "[e]ach party's respective obligations and duties under the [Co-Pack] Agreement and each of the Related Agreements, . . . shall continue on and after the Effective Date and this mutual release does not discharge or alter the duties and obligations of the parties under the [Co-Pack] Agreement or Related Agreements but releases any breach of such agreements to the extent arising prior to the Effective Date." *Settlement Agreement*.

**MEMORANDUM DECISION AND ORDER - 7**

Thus, as the Court indicated in its earlier ruling, the Settlement Agreement simply resolved any disputes that arose on or before April 25, 2011; it did not amend the Co-Pack Agreement to reduce the term from November 30, 2015 to April 2012. The language about the parties' respective obligations and duties continuing after the effective date of the Settlement Agreement would be nonsensical if that were the case. To be reasonable, an interpretation of a contract must be consistent with the language of the contract as a whole. *Kennewick Irrigation Dist., v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989). The language of the Settlement Agreement only makes sense if it is interpreted to mean the Co-Pack Agreement will continue through November 30, 2015 as originally stated in that agreement. Accordingly, the Court will deny the Rule 50(b) motion for judgment as a matter of law for the same reasons it denied the Rule 50(a) motion.

Likewise, the Court will deny Heinz's Rule 59(e) motion to alter or amend judgment. District courts have "considerable discretion" when addressing motions to amend a judgment under Rule 59(e). *Turner v. Burlington Northern Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). However, "a Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014). (*Citing Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000)). "There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to

**MEMORANDUM DECISION AND ORDER - 8**

prevent manifest injustice; or 4) there is an intervening change in controlling law." *Turner*, 338 F.3d at 1063 (Internal citations and quotation marks omitted). Heinz has not satisfied any of these four grounds for the reasons stated above.

2.     **Bright Harvest's Motion to Alter or Amend Judgment**

The standard for a Rule 59(e) motion was set forth just above and will not be repeated here. The Court finds that Bright Harvest, like Heinz, has not met any of the four grounds for granting a Rule 59(e) motion. Bright Harvest asks the Court to increase its damages by more than three times what the jury awarded under Rule 59(e) to correct manifest errors of law or fact, and to prevent a manifest injustice. As the Court explained above, although district courts have considerable discretion when addressing motions to amend a judgment under Rule 59(e), "a Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014). (*Citing Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000)). This is not a case where Rule 59(e) should be used.

Here, Bright Harvest suggests that the lost fixed overhead award is based on manifest errors of law and fact and works a manifest injustice because it did not include the sweet potato fries Heinz produced under SKU 1720, and that the jury assumed Heinz only self-manufactured about three and a half million pounds of sweet potato fries between September 2012 and November 30, 2015. Bright Harvest then gives what was essentially its closing argument about how the jury should have reached a greater damages award. In response, Heinz suggests alternative ways the jury could have reached

MEMORANDUM DECISION AND ORDER - 9

its damages award by rejecting testimony from Mr. Baker, assuming a downward trend of fixed overhead for Bright Harvest based on its financial statements, and a myriad of other suggestions.

Certainly the jury could have reached the conclusion suggested by Bright Harvest. Likewise, the jury may have reached its conclusion by way of some of the suggestions put forth by Heinz. The Court will not try to make that determination. The only question is whether the jury's damages verdict was based on manifest errors of law or fact, or whether it works a manifest injustice. The Court finds that it did not.

### 3.     Motions for a New Trial

Both parties move for a new trial, which would be the third trial in this case. Rule 59(a) states that the Court may grant a new trial on all or some of the issues, and to any party, "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). From this language, the Ninth Circuit has held that the trial court, in considering a motion for new trial "is bound by those grounds that have been historically recognized." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (Internal citation and quotation omitted). Those grounds include, but are not limited to, "claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Id*. (Internal quotation and citation omitted). Thus, "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id*. (Internal quotation and citation omitted).

**MEMORANDUM DECISION AND ORDER - 10**

Thus, "[u]pon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Id*. (Brackets in original) (Internal quotation and citation omitted). The determination of "the clear weight of the evidence" is a fact-specific endeavor, and there must only be some "reasonable basis" for the jury's verdict. *U.S. v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (citations omitted).

Heinz asks for a new trial based upon five reasons that the Court already denied either pretrial or during trial – that certain jury instructions were erroneous, that the court erred in precluding Heinz from introducing its intent for entering into the Co-Pack Agreement, that the Co-Pack Agreement was either a requirements contract or not a contract at all, that the Court refused to give a limiting instruction on Heinz's decision not to purchase more sweet potatoes, and the Court erred by admitting Exhibit 1041A. The Court addressed these objections in detail in pretrial orders and orders during the trial. Heinz's motion raised no new arguments, and the Court is not persuaded to change its earlier ruling. Accordingly, Heinz's motion for new trial will be denied.

For its part, Bright Harvest asks the Court for a new trial for essentially the same reasons it asked the Court to alter or amend the judgment – that the damages award was against the weight of the evidence. The Court disagrees. The jury was given specific instructions on both lost fixed overhead and lost profits, as well as an instruction on Bright Harvest's duty to mitigate. Dkt. 310. The jury's verdict was in line with those

**MEMORANDUM DECISION AND ORDER - 11**

instructions and the evidence presented at trial. Accordingly, the Court will also deny Bright Harvest's motion for new trial. This case has been tried twice in the span of about a year, and the parties must now take it to the Ninth Circuit if they are displeased with the outcome.

## ORDER

IT IS HEREBY ORDERED:

1. Defendant's Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b) and/or to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (Dkt. 326) is **DENIED**.

2. Plaintiff's Second Rule 59 Motion to Alter or Amend Judgment and for New Trial (Dkt. 327) is **DENIED**.

3. Defendant's Motion for New Trial Pursuant to Federal Rule 59(a) Dkt. 328) is **DENIED**.

DATED: December 16, 2016

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 12**