UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIGHT HARVEST SWEET POTATO COMPANY, INC., | Case No. 1:13-cv-00296-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| H.J. HEINZ COMPANY, L.P., | |
| Defendant. | |

## INTRODUCTION

The Court has before it Plaintiff's Motion for Award of Attorney Fees (Dkt. 332). The motion is fully briefed, and the Court now issues the following decision.

## BACKGROUND

This matter was tried to a jury twice. Although somewhat complicated by the type of contract, at its core the case involved a single breach of contract claim. Bright Harvest alleged that Heinz breached the Co-Pack Agreement between the parties when Heinz stopped purchasing sweet potato fries prior to expiration of the agreement.

Bright Harvest and Heinz signed the Co-Pack Agreement on December 7, 2009. The Co-Pack Agreement set terms, conditions, and prices for Bright Harvest to produce sweet potato fries under Heinz's Ore-Ida label. (Dkt. 45-2, p. 1).

The Agreement set forth that Heinz "shall place purchase orders with Co-Packer [Bright Harvest], and Co-Packer shall sell and deliver to Heinz, quantities of the products [sweet potato fries] under the terms of this Agreement." (Dkt. 10-1, p. 4). The term of the Agreement was from December 1, 2009 until November 30, 2015. (Dkt. 10-1, p. 4). The Agreement established a "non-binding planning target of 10 million pounds of sweet potato fries per year," and indicated that it was "the intent of the Parties that Heinz will deliver to Co-Packer purchase orders for such Products as hereinafter provided, subject to the current capacity of Co-Packer to produce such Products." (Dkt. 10-1, p. 5). In addition, Heinz was to provide rolling weekly demand files with 5 weeks of firm production orders and 8 weeks of forecast. (Dkt. 10-1, p. 5). No purchase order could exceed 50% of Bright Harvest's current forecasted volume without mutual consent. (Dkt. 10-1, p. 5). Further, Heinz was to provide Bright Harvest 12 to 18 month rolling forecasts quarterly for operational management and capacity planning. (Dkt. 10-1, p. 6).

Bright Harvest began supplying Heinz with sweet potato fries in 2009. In the first year of the contract, Bright Harvest produced approximately half of the requested 400,000 pounds of sweet potato fries, and in 2010, they produced 6 million pounds for Heinz. (Dkt. 45-1, p. 5). While the Agreement was still in effect, Heinz began producing sweet potato fries in its Ontario, Oregon facility. (Dkt. 45-1, p. 5). And, in March 2011, it submitted a 13-month rolling forecast to Bright Harvest requesting only 4.1 million pounds of sweet potato fries between April 2011 and 2012. (Dkt. 45-1, p. 6). Sweet Harvest claimed that this drop in requested production constituted a breach of the Co-

Pack Agreement. To settle this dispute, Heinz drafted a letter revising its forecast from 4.1 million pounds to over 7 million pounds, which Bright Harvest signed. (Dkt. 45-1, p. 6). However, beginning in July of 2011, Heinz provided Bright Harvest with 12-18 month forecasts showing zero volume for all products after September 2012. (Dkt. 45-1, p. 8). Regarding this as a breach of the Co-Pack Agreement, Bright Harvest filed a breach of contract claim against Heinz in July 2011.

A jury trial was held in March 2015. At the conclusion of the evidence, the Court instructed the jury and gave the jury a special verdict form containing three questions. (Dkt. 153-1). The first question required the jury to determine whether the Co-Pack Agreement was an enforceable contract. The jury answered that it was. The second question asked the jury to decide whether Heinz had breached the Co-Pack Agreement. The jury answered that it had not. As a result, the third question regarding the amount of damages was not answered by the jury. Bright Harvest then filed a motion to amend the judgment, or, in the alternative, for a new trial. The Court granted a new trial after concluding that the jury's verdict was inconsistent.

A second trial was conducted in February/March 2016. The jury in the second trial determined that the Co-Pack Agreement between the parties was an enforceable requirements contract, and that Heinz breached the contract. The jury then awarded damages of $976,370.52 for lost fixed overhead, and $238,518.56 for lost profits. Both parties filed post-trial motions, asking the Court for judgment as a matter of law, to alter

or amend the judgment, or for a new trial. The Court denied all those requests. Bright Harvest's motion for attorney's fees in now ripe for disposition.

**LEGAL STANDARD**

Idaho law governs the award of attorney's fees in this matter. *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1024 (9th Cir.2003). Pursuant to Idaho Code § 12–120(3), the prevailing party in a contract dispute is entitled to a reasonable attorney fee to be set by the Court. Determination of whether a party is the prevailing party is committed to the discretion of the trial court. *Sanders v. Lankford*, 1 P.3d 823, 826 (Idaho 2000); see also I.R.C.P. 54(d)(1)(B).

In Idaho, governing legal standards on the prevailing party issue are provided by I.R.C.P. 54(d)(1)(B). "[T]here are three principal factors the trial court must consider when determining which party, if any, prevailed: (1) the final judgment or result obtained in relation to the relief sought; (2) whether there were multiple claims or issues between the parties; and (3) the extent to which each of the parties prevailed on each of the claims or issues." Id. The Court in its discretion may determine that a party prevailed in part and did not prevail in part, and may apportion the costs between and among the parties in a fair and equitable manner after considering all the issues and claims involved in the action and the resultant judgment or judgments obtained. *Nguyen v. Bui*, 191 P.3d 1107, 1112 (Idaho App.2008); *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 117 P.3d 130, 133 (Idaho 2005).

## ANALYSIS

### 1.      Bright Harvest is the Prevailing Party

As explained above, although the case was somewhat complicated, there was only one substantive claim in this case – breach of contract. Heinz argued that the agreement was not an enforceable requirements contract. The jury determined that it was, and concluded that Heinz breached it. Thus, the jury found in favor of Bright Harvest on the only claim. Accordingly, factors two and three – whether there were multiple claims or issues between the parties, and the extent to which each of the parties prevailed on each of the claims or issues – clearly favor Bright Harvest as the prevailing party.

The degree of the final judgment obtained in relation to the relief sought is less straightforward in this case, but still favors Bright Harvest as the prevailing party. Although Bright Harvest did not recover the total amount it sought, it did recover more than $1.2 million. According to counsel, there were back and forth discussions and requests to settle the case – from a request by Bright Harvest that Heinz pay it nearly $11 million, to a request by Heinz that Bright Harvest pay it nearly $500 thousand. But the parties never reached any sort of agreement, and there is no indication that they were ever close to settlement. Under these circumstances, a $1.2 million recovery for Bright Harvest is a significant enough judgment in relation to the relief sought to favor Bright Harvest as the prevailing party. Accordingly, the Court finds that Bright Harvest was the prevailing party for purposes of an attorney's fee award.

2.     **Amount of Fees**

The Court must next determine what amount of attorney's fees is reasonable.
Idaho Rule of Civil Procedure 54(e)(3) tells the Court to consider the following when
making that determination: (1) the time and labor required; (2) the novelty and difficulty
of the questions; (3) the skill requisite to perform the legal service properly and the
experience and ability of the attorney in the particular field of law; (4) the prevailing
charges for like work; (5) whether the fee is fixed or contingent; (6) the time limitations
imposed by the client or the circumstances of the case; (7) the amount involved and the
results obtained; (8) the undesirability of the case; (9) the nature and length of the
professional relationship with the client; (10) awards in similar cases; (11) the reasonable
cost of automated legal research (Computer Assisted Legal Research), if the court finds it
was reasonably necessary in preparing a party's case; (12) any other factor which the
court deems appropriate in the particular case. *See Sun Valley Potato Growers, Inc. v.
Texas Refinery Corp.,* 86 P.3d 475, 483 (Idaho 2004). The Ninth Circuit has adopted
essentially the same twelve factors. *See e.g. Chalmers v. City of Los Angeles*, 796 F.2d
1205, 1213 (9th Cir.1986). The "trial court is not required to make specific findings
demonstrating how it employed any of the factors in Rule 54(e)(3), [but] it is required to
consider those factors when determining the amount of the fees to award." *Sun Valley*, 86
P.3d at 483 (Internal citation and quotation omitted).

As discussed below, the Court generally finds that Bright Harvest's request for fees is reasonable, with one exception that will be noted after considering the 12 factors listed above.

First: Bright Harvest's counsel indicates that they reviewed over 50,000 pages of documents, participated in 17 depositions, plus they worked on numerous motions and two trials. The Court is intimately familiar with the motions and trials, and the Court notes that all were hotly contested. This was all very time consuming and labor intensive.

Second: Although this case was essentially about a single breach of contract claim, that claim was difficult to address as evidenced by the jury's inconsistent verdict in the first trial, and the need for a second trial. Although the Court would place some of the blame on both sets of attorneys for adding to the complexity of this case, the issue was nevertheless complicated by the language of the contract and the law surrounding requirements contracts.

Third: The Court notes that the skill requisite to perform the legal services properly and the experience and ability of the attorneys in the particular area of law was fairly standard in this case. The legal and factual issues presented by the case were competently addressed by counsel who has appeared before this Court on many other matters.

Fourth: Counsel's charges are similar to the prevailing charges for like work. Having been one of only two Article III district court judges in the entire District of Idaho

for the past 20 years, this Court is intimately familiar with the going rates for a case like this in this district.

Fifth: Counsel represented Bright Harvest on an hourly rate, which is reasonable and consistent with work of this type in this district.

Sixth: The case was not outside normal parameters regarding time limitations. However, a second trial, necessitated by an inconsistent verdict by the jury, obviously required additional time and resources.

Seventh: As explained above, there was significant back and forth between the parties on the amount that could settle this case – including a request that Bright Harvest pay Heinz to settle the case. Under these circumstances, a jury verdict of over $1.2 million justifies the amount of attorney fees.

Eighth: The Court does not find the case particularly desirable or undesirable. Although the case required a lot of analysis of general contract law, Idaho contract law, requirements contracts, and the somewhat inconsistent language in the Co-Pack Agreement, the legal issues were not what the Court would consider undesirable areas of the law. The Court does recognize that the case required some travel for counsel, and that Heinz is a respectable opponent with many resources, but that does not necessarily make a case less desirable – in fact, sometimes it is better try a case against competent counsel than incompetent and unprepared counsel.

Ninth: There is nothing significant about the relationship between counsel and Bright Harvest that would affect the attorney's fee analysis.

Tenth: As explained by counsel, the Idaho Supreme Court has upheld attorney's fees awards in commercial transactions that are more than double the amount of recovery. *See, e.g., Electrical Wholesale Supply Co., Inc.v. Nielson*, 41 P.3d 242 (Idaho 2001). *Nielson* involved a substantially smaller award than the one awarded here, but the Idaho Supreme Court's determination that a fee award which is more than the judgment does not render the award an abuse of discretion is still a valid holding. Here, the attorney's fee award sought is high, but still less than the judgment. And through firsthand knowledge of what the case entailed, the Court can attest to the need for extensive attorney work on the case.

Eleventh: As with most cases since the advent of online legal research, counsel state that automated legal research was necessary to research contested legal issues. Bright Harvest seeks only $2,494.82 for automated legal research, which is reasonable given the complexity of the legal issues and the hotly contested areas of the law.

Twelfth: Regarding "any other factor which the court deems appropriate in the particular case," the Court notes that after the first trial where Heinz was considered the prevailing party, Heinz asked for attorney's fees in the amount of almost $500,000.00, which is quite similar to the amount of fees Bright Harvest seeks for the same time period. The Court would expect the fees to be similar, and this is a good indicator that the fees are reasonable.

Under all these circumstances, the Court finds that Bright Harvest's request for attorney's fees is reasonable, with one exception. The Court will not award the fees

incurred by Saalfeld Griggs PC. The bulk of this bill was for services by attorney Douglas Alexander. However, he was not a litigator for the case, and was, in fact, listed as a possible fact witness for trial. He was never listed as counsel of record in this case, and his invoice does not suggest he was part of the litigation team. To the extent he did assist with the litigation, the Court finds his billings duplicative of work done by the other litigators for Bright Harvest. Therefore, the Saalfeld Griggs invoice for $10,802 will not be awarded. Thus, the total award for attorney's fees is $781,025.00. ($198,392.00, Dkt. 332-3; $381,613.00, Dkt. 332-4; $140,651.50, Dkt. 332-4; $16,553.00, Dkt. 332-4; $2,950.00, Dkt. 332-8; $16,631.00, Dkt. 347-1; $24,234.50, Dkt. 347-3).

## 3.     Travel Expenses

The Court will not award the requested travel expenses of $48,510.79. Bright Harvest made a very minimal argument for these expenses. In whole Bright Harvest stated,

> [C]ounsel for Bright Harvest traveled to Pennsylvania and Vermont for depositions. Additionally, because of Bright Harvest's location in Arkansas it was reasonable and necessary for Bright Harvest's counsel to travel to Arkansas at various times to prepare for this matter. Bright Harvest's employees were required to travel to and stay in Boise, Idaho for an extended period of time for two separate trials. These costs were necessary and reasonable.

*Plf. Atty Fee Br.*, p.7, Dkt. 332-1. This is a request for costs in excess of those already being taxed by the Court (see below). IRCP 54(d)(1)(D) states that additional, non-taxable, costs "may be allowed upon a showing that said costs were necessary and exceptional costs reasonably incurred, and should in the

interest of justice be assessed against the adverse party." IRCP 54(d)(1)(D).

Discretionary costs may include costs related to long distance telephone calls,

photocopying, faxes, travel expenses, and expert witnesses. *See Hayden Lake Fire*

*Protection Dist. v. Alcorn*, 109 P.3d 161, 168 (Idaho 2005). The Court must make

express findings as to why a party's discretionary costs should or should not be

allowed. *Id*.; see also I.R.C.P. 54(d)(1)(D). The Court need not evaluate the

requested costs item by item. Instead, "express findings as to the general character

of requested costs and whether such costs are necessary, reasonable, exceptional,

and in the interests of justice is sufficient to comply with this requirement."

*Puckett v. Verska*, 158 P.3d 937, 945–946 (Idaho 2007). Here, Bright Harvest did

not cite a case, a rule, a statute, a declaration, or anything else, and it did not even

make an argument that the costs were exceptional. In reply to Heinz's response to

the request, Bright Harvest made a bit more of an attempt to justify the request –

bit it was still not enough for the Court to award the exceptional costs.

**4.      Costs**

Bright Harvest filed its Bill of Costs on May 6, 2016, using the Court's

standard form. Heinz did not object or otherwise respond, but the Court has

slightly reduced the award in line with its standard practice. The Court will award

the $5,535.85 in deposition costs. Bright Harvest requested $768.47 in witness

fees, but it did not fill out the witness fees portion of the document correctly by

indicating how many days the witnesses attended, nor did it provide mileage. This

makes it impossible to verify the total request for each witness. The Court will award $247.83 as requested for David Simmons and Kris Kauffman because the Court has a record of them appearing at trial. However, the Court will not award costs for Jeff Kronenberg or Hershall Johnson because they were not on the witness list, did not testify at trial, and the Court has no way to verify they were witnesses. The Court will also deny the request for $1,023.60 under the copies section because the receipt provided appears to account for supplies for creating binders, which is not allowed under this section. Accordingly, the Court will tax costs in the amount of $5,783.68 ($5,535.85 deposition costs; $247.83 witness fees for Simmons and Kauffman).

## ORDER

**IT IS ORDERED:**

1.  Plaintiff's Motion for Award of Attorney Fees (Dkt. 332) is **GRANTED in part** and **DENIED in part**. Heinz shall pay Bright Harvest attorney fees in the amount of $781,025.00 and costs in the amount of $5,535.85.

DATED: March 17, 2017

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 12**